# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re Application of<br><br>**LUCILLE HOLDINGS PTE. LTD.**<br>**UNDER 28 U.S.C. § 1782,**<br><br>                   **Petitioner.** | **Miscellaneous Action No.**<br>**1:21-mc-99 (GMH)** |

## <u>MEMORANDUM OPINION AND ORDER</u>

Under 28 U.S.C. § 1782, a federal district court may compel (1) a person or entity within its district to respond to discovery requests filed by (2) an applicant that has an interest in a legal proceeding that (3) has been, or is reasonably contemplated to be, filed in a foreign or international tribunal. If a court has that authority, then—as directed by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004)—it must decide whether to exercise it, taking into account not only conventional discovery issues like relevance and burden, but also the nature of the foreign proceeding and its discovery tools. Here, in July 2021, prior to bringing any foreign legal action, Lucille Holdings Pte. Ltd. ("Lucille") submitted its application to this Court seeking issuance of a subpoena for documents and one for testimony from Edge Funds Management LLC ("Edge"), an entity headquartered in Washington, D.C., that served as the asset manager for an office building in which Lucille had an ownership interest before it was foreclosed upon in 2020. Although the parties cooperated for many months on Edge's voluntary production of documents to Lucille, they eventually reached an impasse around the beginning of 2022 and returned to seek the Court's guidance. In connection with its final brief (in this heavily briefed case),[1] Lucille

---

[1] The relevant briefing comprises (1) Lucille's application for an order pursuant to section 1782 (ECF No. 1); (2) Edge's response to the Court's Order to Show Cause dated December 2, 2022 (ECF No. 14); (3) Lucille's response to

informed the Court that in mid-March 2022, it had filed two actions related to the dispute underlying its section 1782 request—one in the Royal Court of Guernsey and one in the High Court of Justice for England and Wales.

At issue here is both whether the Court has the authority under the statute to grant Lucille's application and, if it does, whether it should exercise its discretion to do so.  The Court finds, first, that it does not have the authority to grant the application because a legal foreign legal proceeding was not in Lucille's reasonable contemplation at the time it filed its application; rather, at that time, it was in a preliminary stage of investigating whether facts existed that would allow it to file claims.  Second, even if the Court had the authority to order the requested discovery, it would not do so.  With the filing of the foreign proceedings—eight months after the filing of its section 1782 application—the circumstances have changed sufficiently to allow fuller inquiry under *Intel* should Lucille decide to initiate another such application.  Therefore, Lucille's application is denied, but without prejudice to its filing a new, sufficient application addressing both the statutory requirements and the *Intel* factors in these changed circumstances.[2]

---

ECF No. 14 (ECF No. 17); (4) Edge's reply to ECF No. 17 (ECF No. 18); (5) the parties' joint status report filed February 4, 2022 (ECF No. 21); (6) Edge's supplemental memorandum dated February 11, 2022 (ECF No. 23); (7) Lucille's supplemental memorandum dated February 11, 2022 (ECF No. 24); (8) Lucille's motion for discovery (ECF No. 30); (9) Edge's supplemental memorandum dated March 15, 2022 (ECF No. 33); and (10) Lucille's response to Edge's supplemental memorandum (ECF No. 34).  Page numbers cited herein are those assigned by the Court's CM/ECF system.

[2] "Since the Court's decision on a Section 1782 application is non-dispositive, it may be decided by a magistrate judge by opinion and order, rather than a report and recommendation to the district court."  *In re Application of Shervin Pishevar for an Order to take Discovery for use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782*, 439 F. Supp. 3d 290, 301 (S.D.N.Y. 2020) (citing *In re Hulley Enterprises Ltd.*, 400 F. Supp. 3d 62, 71 (S.D.N.Y. 2019) ("This Court agrees with the majority of courts finding that rulings on § 1782 applications are *not* dispositive.")), *adhered to on reconsideration sub nom. In re Pishevar*, No. 19-mc-503, 2020 WL 1862586 (S.D.N.Y. Apr. 14, 2020); *see also In re Pons*, __ F. Supp. 3d __, __, 2020 WL 1860908, at *3 (S.D. Fla. 2020) (noting that "[t]he great majority of courts to address the issue" have determined that a magistrate judge may dispose of "Section 1782 discovery motions" by order rather than by report and recommendation and collecting cases).  That said, the D.C. Circuit has recently held that an appeal of a magistrate judge's decision on a section 1782 application must first be addressed by a district judge pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(a) of the Federal Rules of Civil Procedure before it can be appealed to the Circuit.  *See* Order, *Menashe v. Covington & Burling*, No. 21-7091 (D.C. Cir. Jan. 6, 2022) (dismissing appeal for lack of jurisdiction because a district judge had not yet ruled on objections to a magistrate judge's decision pursuant to Rule 72(a)); *cf. Charter Oil Co. v. Am. Emp'rs' Ins. Co.*, 69 F.3d 1160, 1171–72 (D.C. Cir. 1995) (holding that the

# I.      BACKGROUND

## A.      The Underlying Dispute between Lucille and HSBC

The dispute underlying Lucille's application is a property deal gone bad.  In 2010, Lucille, a Singaporean entity, received a confidential Property Investment Memorandum from HSBC Private Bank (Suisse) SA ("HSBC") and HSBC Alternative Investments Ltd. ("HAIL"), a London company, inviting it to purchase an interest in an entity known as "1350 Eye Street Limited," a Guernsey company directed by HSBC Management (Guernsey) Limited ("HSBC Guernsey" and, with HSBC and HAIL, the "HSBC Entities") that was formed to purchase an office building located at 1350 I Street, NW, Washington, DC (the "Property").  ECF No. 1-2 at 1–2, ¶¶ 2–3.  The HSBC Entities were "to be in charge of managing the Property, to closely monitor the relevant real-estate market and the Property's estimated value, to increase the Property's value substantially, and to resell it within seven years for a profit." Lucille "obtained a beneficial interest" in $4.1 million-worth of shares of 1350 Eye Street Limited.  *Id.* at 2, ¶¶ 4–5.  According to Lucille, its investment, taken together with the investment of 10 other entities in 1350 Eye Street Limited, totaled some $90 million.  *Id.* at 2, ¶ 4.  In mid-2010, 1350 Eye Street Limited purchased the Property for approximately $208 million.  *Id.*; *see also* ECF No. 19-1 at 3, ¶ 2.11.  Edge—a Delaware "real estate investor, investment advisor, and asset management firm" with its principal place of business in Washington, D.C.—"managed all acquisition, legal, tax, debt[,] and closing processes" for the Property and served as its asset manager.[3]  ECF No. 1-2 at 3, ¶ 6; *id.* at 8, 13.

---

D.C. Circuit lacked jurisdiction over an appeal of a magistrate judge's order on a non-dispositive dispute where no objections were filed to the order pursuant to Rule 72(a)), *cited in* Order at 1, *Menashe*, No. 21-7091.

[3] According to Edge, an "asset manager" focuses on financial matters and maximization of a property owner's return on its investment, but does not manage the day-to-day operations of a property, which is the bailiwick of a "property manager."  ECF No. 18 at 2, 4.

Lucille alleges that the HSBC Entities failed to "properly monitor or maintain the Property's value" in derogation of their fiduciary duties to Lucille. *Id.* at 2–3, ¶¶ 5, 7. More, according to Lucille, the HSBC Entities "failed to cause the Property to be sold as expected in 2016–2017, when [its] value had increased . . . to the $275–292 million range." *Id.* at 3, ¶ 7. By 2020, the Property's value had dropped to $180 million, it had been refinanced twice, and outstanding debt on it had increased to $165 million. *Id.* Eventually, the Property was foreclosed on, costing Lucille its entire investment as well as its expected profits. *Id.* The entity 1350 Eye Street Limited thereafter entered a liquidation process in Guernsey. ECF No. 10 at 1.

B.   **The Section 1782 Application and the Parties' Original Agreement Regarding Document Production**

Lucille filed its application on July 12, 2021, seeking production of documents from and a deposition of Edge. ECF No. 1. The application includes a declaration from Rodney Lee, an individual who "ha[s] an ownership interest in Lucille." ECF No. 1–2, ¶ 2. Lee asserted that the HSBC Entities have "resisted transparently explaining their conduct to Lucille," so that "Lucille is pursuing its options for obtaining information about 1350 Eye Street Limited." *Id.* at 4, ¶ 9. He further stated that "Lucille believes in good faith that [those entities] have violated legal duties owed to Lucille" and "contemplates asserting and intends to assert applicable causes of action against HAIL, HSBC, or HSBC Guernsey (or some combination thereof) as soon as reasonably practicable, depending on whether Lucille receives satisfactory responses to further inquiries or requests for relief." *Id.* According to Mr. Lee, among the causes of action Lucille was "investigating and contemplating" were claims against HAIL for negligent breach of duty under English law; against HSBC Guernsey for negligence and breach of fiduciary duty under Singapore or Guernsey law and for breach of contract under Guernsey law; and other unidentified "potential causes of action" against each of the HSBC Entities. ECF No. 1-2 at 4–5, ¶¶ 10–13; *see also* ECF

No. 17-1 at 3, ¶ 7.  Such actions would be brought, according to Lee, in a "suitable court" in Singapore, Guernsey, or England, or in an arbitration in Guernsey.  ECF No. 1-2 at 4–5, ¶¶ 10–12.

The application seeks information from Edge as the "local asset manager for the Property," which "reported to HAIL and HSBC Guernsey and received authorizations, guidance, and instruction from those entities."  *Id.* at 3, ¶ 6.  More specifically, it asks for documents and information concerning "HAIL and HSBC's solicitation of investments in the Property[;] HAIL and HSBC Guernsey's duties, roles, and decision-making concerning . . . monitoring the Property and tracking its value[;] HAIL and HSBC Guernsey's control of funds[;] and conduct evidencing HAIL and HSBC Guernsey's negligence and breach of fiduciary and other duties."  *Id.* at 5, ¶ 14.

Lucille's proposed document subpoena seeks 19 categories of documents, including the "Asset Management Agreement that Edge . . . entered into in relation to the Property" and all other contracts related to the Property; "[a]ll documents and [ESI] relating to communications relating to the Property between or among" Edge and the HSBC Entities; "[a]ll documents and electronically stored information relating to 1350 Eye Street Limited"; "[a]ll documents and [ESI] relating to" purchasing, managing, valuing, improving, refinancing, foreclosing upon, and attempting to sell the Property; and "[a]ll documents and electronically stored information relating to" strategies, business plans, business advice, instructions, forecasts, evaluations, etc., regarding the Property.  ECF No. 1-3.  The deposition subpoena seeks testimony on 24 similar subjects, as well as Edge's preservation, search for, and collection of the documents and electronically stored information sought in the document subpoena.  ECF No. 1-4.

As is its practice in section 1782 cases, the Court on July 26, 2021, issued to Edge an Order to Show Cause why the application should not be granted and set briefing deadlines.  ECF No. 4 (the "July 26 OSC").  Edge sought, and was granted, an extension of its time to respond.  ECF

Nos. 5–7.  Meanwhile, the parties met and conferred, and Edge agreed to voluntarily provide the following documents to Lucille:   (1) the Asset Management Agreement Edge entered into regarding the Property and any additional contracts related to the Property between Edge and HSBC, HAIL, HSBC Guernsey, or 1350 Eye Street Limited, (2) Edge's "request for approval files" and any substantive responses related to the Property,[4] (3) the business plan concerning the Property, (4) third-party appraisals of the Property, (5) annual financial statements for the Property, and (6) loan documents and term sheets for any refinancing of the Property.  ECF No. 8 at 2.  By agreement of the parties, Lucille was to review the documents to determine "whether [it] desire[d] additional documents or a deposition of Edge"; if it did, the parties agreed to meet and confer on the issue of "additional information or testimony from Edge." *Id.* at 3.  Any production was made without prejudice to either party's rights, claims, or defenses concerning the section 1782 application. *Id.*  That agreement was embodied in a proposed Order, signed by the Court on August 24, 2021, which also included a confidentiality provision and an extension of the time for Edge to submit its response to the July 26 Order to Show Cause until December 1, 2021.  ECF No. 9 (the "August 24 Order").

Thereafter, Edge provided documents to Lucille as agreed.  ECF No. 13-1 at 2–3, ¶¶ 5, 7.  According to Lucille, Edge produced 312 non-duplicate documents,[5] including

> Edge's Asset Management Agreement . . . ; appraisals of the Property for 2015 to 2020; emails attaching some (but not all) annual business plans for the Property for 2015 to 2020; instruments relating to the refinancing of the loan on the Property; some emails and letters concerning appraisals and refinancing of the Property; summary balance sheets regarding the Property for 2015 to 2020; and some additional correspondence concerning the Property, fees owed to Edge in relation

---

[4] Edge has stated that the "request for approval files" contain all documents relating to the "tactical and strategic business and leasing plans for the Property, directives from HAIL and HSBC Guernsey to Edge, and Edge's communication of information to HAIL and HSBC Guernsey concerning the status of the investment."  ECF No. 18 at 5.

[5] According to Lucille, of the 320 documents Edge produced, 8 were duplicates.  ECF No. 17 at 7.

to refinancing and managing the Property, the Property's value, and other Property-related matters.

ECF No. 17 at 7.  In early November 2021, the parties asked the Court to amend the August 24 Order to allow Lucille to provide copies of those documents for use in 1350 Eye Street Limited's liquidation proceedings in Guernsey to enable the liquidators to assess potential claims by the company in liquidation against the HSBC Entities.  ECF No. 10 at 1–2.  The Court granted that motion.  ECF No. 11.

### C. Lucille's Follow-Up Request, the December 2, 2021 Order to Show Cause, and Subsequent Briefing

On November 12, 2021, Lucille sent a letter to Edge requesting its voluntary production of 10 categories of additional documents:

Category 1.    "Analyses of or plans for the leasing strategy (as referenced in business plans) for . . . [the Property]."

Category 2.    "Edge's business plans for the Property for 2015, 2017, 2019, and 2020."

Category 3.    "Offers, solicitations of offers, and responses to offer and solicitations of offers concerning the sale/purchase of the Property."

Category 4.    "Documents evidencing the reason for the first extension of the investment term for the Property in 2015."

Category 5.    "Summaries or reports showing annual expenditures for improvements made to the Property with enough detail to generally describe the nature of the improvements."

Category 6.    "Analyses of or plans for an improvement strategy for the Property (i.e., what improvements to the Property were advisable or planned for the Property to ensure that the Property's amenities were attractive to current and prospective tenants)."

Category 7.    "Analyses of market trends or of typical requirements for property-related amenities for A-level/trophy-level commercial office buildings in the Washington D.C. area."

Category 8.   "Analyses comparing the Property with the office building located at 1625 I Street, Washington, D.C."[6]

Category 9.   "An accounting or reports on an annual basis showing the fees paid to Edge, [HAIL], and HSBC [Guernsey] in relation to the Property."

Category 10.   "Emails, letters, and other communications with [HAIL] or HSBC [Guernsey] concerning (i) the leasing, sale or improvement strategy for the Property, (ii) the business plans and market trends for the Property, (iii) the Property's decline in value, (iv) recommendations and instructions concerning the leasing, sale, and major improvements to the Property, and (v) fees paid to Edge, [HAIL], and HSBC [Guernsey] in relation to the Property."

ECF No. 13-2 (the "November 12 Letter"). In November and December, the parties conferred on those additional requests. ECF Nos. 14-2 through 14-4; ECF No. 17-2 at 3, ¶ 5; *id.* at 6–14.

As noted, Edge's response to the July 26 OSC was due on December 1, 2021. ECF Nos. 9, 11. December 1, 2021, came and went without a submission from Edge. Therefore, on December 2, 2021, the Court issued another Order to Show Cause setting a deadline of December 10, 2021, for Edge to establish why it should not be deemed to have forfeited any opposition to the Lucille's application and why that application should not be granted. ECF No. 12 (the "December 2 OSC"). Edge timely responded with a motion for extension of time to respond to the July 26 OSC and a response that argued that Lucille's section 1782 application should not be granted as presented and proposed modifications to the discovery requests with which Edge would comply. ECF Nos. 13–14. In its response, Edge asserted that, because Lucille had "not yet filed the underlying foreign litigation" the Court had "a legal basis . . . for denying Lucille's application outright." ECF No. 14 at 9. The Court then set a schedule for further briefing and directed the parties to continue to meet and confer. ECF No. 16. Conferring was unsuccessful and briefing was filed that focused primarily on the discovery requests at issue and their burdensomeness. *See*

---

[6] Lucille accepted Edge's representation that Edge does not possess such documents. *See* ECF No. 17 at 18, 22.

*generally* ECF Nos. 17–18.  However, the parties also addressed the argument that the application could be denied because Lucille had not yet filed a foreign proceeding.  *See* ECF No. 17 at 11; ECF No. 18 at 6–8.  At that point, the dispute seemed ready for resolution.

However, on January 11, 2022, Lucille filed a status update that indicated the parties' positions were in flux.  ECF No. 19.  Specifically, it attached correspondence between the parties that showed Lucille had "accept[ed] . . . for now" Edge's representations that it did not possess documents responsive to Categories 1 and 8; Edge's representations that it had produced all documents responsive to Categories 4, 6, and 7; and Edge's representations that it would search for further documents responsive to Categories all documents responsive to Categories 2, 3, and 5.  ECF No. 19-3 at 2–4.  Lucille's status update also attached two "Letters Before Action" that Lucille's Guernsey counsel had sent to HAIL and HSBC Guernsey, also on January 11, 2022.  ECF Nos. 19-1–19-2.  The Court ordered the parties to continue to meet and confer and to file a joint status update on February 4, 2022.[7]  ECF No. 20.  The status report filed on that date indicated the parties had resolved all disputes but three:  (1) Lucille's request for production of Edge's emails (Category 10, above);  (2) Lucille's request for a deposition of Edge; and (3) Edge's request for cost- and fee-shifting.  ECF No. 21.  In light of the progress made, the Court ordered the parties to continue to confer and, if they were unable to resolve these disputes, to each file a brief stating its final position on February 11, 2022.  ECF No. 22.

The parties did not resolve their differences and each filed a brief as ordered.  ECF Nos. 23–24.  Lucille asserted that it expected to "file a foreign legal proceeding against HAIL and HSBC Guernsey no later than March 2022" alleging that:

> [t]hose parties breached their duties owed to Lucille by, among other things: neglecting to ensure that the Property maintained competitive status; failing to

---

[7] That Order also granted Edge's request for an extension of time to respond to the July 26, 2021 Order to Show Cause, *nunc pro tunc*.  ECF No. 20.

properly monitor the Property's and Edge's performance; misrepresenting the Property's performance to investors; and permitting Edge to benefit from management and refinancing fees in a manner that contradicted the investors' interests.

ECF No. 24 at 2.  Lucille contended it needed the requested additional documents and information from Edge because, (1) without such information "it would be difficult for Lucille to test the accuracy of HAIL and HSBC Guernsey's communications to Lucille about the Property's plans and performance"; (2) "Edge's development and proposal of strategic plans for the Property and related communications with HAIL and HSBC Guernsey are central factually to Lucille's proposed claims"; and (3) "to know why the Property was not sold as planned while its valuation remained positive . . . Lucille needs to learn from Edge (among other things) the considerations that resulted in refinancing the Property and delaying its sale."  *Id.* at 2–3.  It proposed two alternative search protocols for documents responsive to Category 10, the request for emails. Noting that Edge's counsel had "represented that Edge Vice-President Tiffany Sanders and President Gary Siegel . . . each keeps an electronic document folder devoted to the Property," Lucille asked that Edge produce the documents in those folders that contain the term "'1350,' which was a subject tag for the Property," or, in the alternative, that Edge produce emails and attachments from those folders containing the term "1350" that were "sent to or from the following HAIL and HSBC Guernsey personnel:  Paul Ruse; Stephen Rouxel, John Oldham; Daniel Samson; Jon Evans; Christopher Allen; Guy Morell; Tim Williams; Russell Sykes; and Ian Ratledge."  *Id.* at 4.  Lucille further sought a 7-hour Rule 30(b)(6) deposition of Edge on the topics in its deposition subpoena.  *Id.* at 4–5; *see also* ECF No. 17 at 14.  Lucille offered to share the cost of an e-discovery vendor with Edge but objected to any further cost- or fee-shifting.  ECF No. 24 at 5.

Edge asserted that Lucille's section 1782 application was legally insufficient because seven months after it was filed it was still unclear "in what court system Lucille [might] someday file

something or against precisely whom it will file, the nature or character of the still unidentified system, or whether there are information gathering restrictions in an as-yet unidentified system." ECF No. 23 at 1–2. It contended that Lucille's January 2022 Letters Before Action were "mere challenges to HSBC and HAIL's business decisions, which are not litigable" and that they did not indicate that litigation was within reasonable contemplation either at the time the application was filed or seven months later. *Id.* at 2. Edge further objected to Lucille's request for "unfettered production of 5 years of Edge's emails," asserted that a deposition was unnecessary or should be limited in light of the documents Edge already produced, and demanded that Lucille pay the costs for any further discovery, including attorney's fees. *Id.* at 3–5.

At a February 22, 2022 hearing on Lucille's application, the Court noted that there were still significant issues that required briefing. *Id.* Consequently, the next day the Court ordered the parties to file supplemental briefs addressing:

(1)     whether the statutory requirements of section 1782(a)—that the target of the discovery resides or can be found in the district in which the application is filed, that the discovery is for use in a foreign proceeding, and that the application is made by an "interested person," 28 U.S.C. § 1782(a)—must be met as of the date of the application in order for a federal court to have subject matter jurisdiction to address an application for discovery under the provision;

(2)     whether, if not strictly jurisdictional, those statutory requirements must nevertheless be met as of the date the application is filed in order for a federal court to have the authority to resolve an application for discovery under the provision;

(3)     whether compliance with those requirements can be waived or forfeited by the target of the application and, if so, whether Edge waived or forfeited such compliance;

(5)     whether Lucille (a) had met the requirements of 28 U.S.C. § 1782 as of the date of the application, (b) had met the requirements of 28 U.S.C. § 1782 as of the date of the discovery hearing in this case, or (c) will meet the requirements of 28 U.S.C. § 1782(a) as of some other date it proposes should be the relevant date;

(6)     the burdensomeness of Lucille's remaining request for production of documents, supported by affidavits or declarations;

(7)     the burdensomeness of Lucille's proposed deposition subpoena, supported by affidavits or declarations; and

(8)     any additional proposals for cost-sharing consistent with the Federal Rules of Civil Procedure.

ECF Nos. 29, 32.

In its opening brief in response to that Order, Lucille argued, in relevant part, that the three requirements of section 1782(a) are non-jurisdictional but nonetheless must be met before a court may grant an application, that the court should evaluate whether an applicant has met those requirements at the time it resolves the application, and that Lucille had met those requirements at all stages of this litigation, from the moment it filed its application until now. *See generally* ECF No. 30. It further amended its deposition request to seek not a Rule 30(b)(6) deposition of Edge, but individual depositions of Edge's President and Vice-President. *Id.* at 25. In opposition, Edge agreed that the requirements of section 1782 are non-jurisdictional, but otherwise disagreed with Lucille's arguments as to the statute, arguing, among other things, that a court may grant a section 1782 application only if the applicant meets the statutory requirements at the time it files the application and that Lucille had not done so at that time. ECF No. 33 at 3–17. Regarding the request for emails (that is, the Category 10 documents), Edge asserted that Lucille should withdraw its request because it can retrieve the emails from HAIL or HSBC Guernsey, two of its potential defendants. *Id.* at 28–29. As to the deposition request, Edge estimated it would take hundreds— if not thousands—of hours to prepare a deponent to testify as to the 24 topics in the proposed subpoena. *Id.* at 22–27. Edge proposed a 2-hour deposition focused on "Edge's knowledge of strategic decisions concerning the Property communicated to Edge by HAIL or HSBC Guernsey,

and Edge's recommendations concerning the same." *Id.* at 27.  Edge did not respond to Lucille's amended request for individual depositions of Siegel and Sanders.

The last of those briefs, from Lucille, was filed on March 21, 2022.  In it, Lucille makes two significant assertions.  A declaration from Lucille's counsel in this action recites that, in mid-March 2022, "claims . . . [were] commenced in the Royal Court of Guernsey against" HSBC Guernsey and HAIL and, in addition, a claim has been commenced against HAIL in the High Court of Justice for England and Wales.  ECF No. 35-1 at 1, 4, ¶¶ 2, 7.  More, Lucille renounces its earlier acceptance of Edge's representations about the completeness of its responses to Categories 1 through 9 in the November 12 Letter, asserting that Edge's counsel's admission that he had not reviewed the documents in the email folders at issue establish that Edge's assertion that it had produced all relevant documents—including all relevant documents in response to Category 10—was misleading.  ECF No. 35 at 23–24.

## II.    LEGAL STANDARD

Section 1782 provides, in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation.  The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person . . . .  To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a).  A two-stage inquiry informs whether a federal court will grant a motion under section 1782(a).  First, the court must determine whether it *can* order the requested relief—that is, whether it has the authority to do so; second, it must decide whether it *should* order the requested relief—that is, whether to exercise its discretion to do so, keeping in mind the statue's "twin aims of 'providing efficient assistance to participants in international litigation and

13

encouraging foreign countries by example to provide similar assistance in our courts.'" *Intel Corp.*, 542 U.S. at 252, 255 (quoting *Advanced Micro Devices, Inc. v. Intel Corp.*, 292 F.3d 664, 669 (9th Cir. 2002)).

As to the first step, "[a] district court has the authority to grant an application when . . . (1) the person from whom discovery is sought resides or is found within the district; (2) the discovery is for use in a proceeding before a foreign or international tribunal; and (3) the application is made by an interested person." *In re Veiga*, 746 F. Supp. 2d 8, 17 (D.D.C. 2010) (citing 28 U.S.C. § 1782(a)). The second step is informed by the following four factors outlined in *Intel*: (1) whether the target of the discovery request is a participant in the foreign or international proceeding, (2) the nature of the foreign tribunal and character of its proceedings, (3) whether the application is an attempt to "circumvent foreign proof-gathering restrictions or other policies," and (4) whether the request is "unduly intrusive or burdensome." *Id.* (quoting *Intel*, 542 U.S. at 264–65). "The discretionary guidelines in *Intel* do not command that each factor be weighed equally, nor do they dictate whether any particular factor should take preceden[ce]." *In re Application of Leret*, 51 F. Supp. 3d 66, 71 (D.D.C. 2014). These factors are merely designed to "guide" a court adjudicating a section 1782 discovery application. *See Intel*, 542 U.S. at 247.

Generally, the standards of the Federal Rules of Civil Procedure govern discovery sought under section 1782(a). *See, e.g.*, 28 U.S.C. § 1782(a) (stating that, unless the court directs otherwise, "the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure"); *see also In re Barnwell Enters. Ltd.*, 265 F. Supp. 3d 1, 15 (D.D.C. 2017) (applying the standards of the Federal Rules of Civil Procedure to decide an application under section 1782(a)).

14

### III.   DISCUSSION

One thing is clear.  Before a federal court can order discovery under section 1782, the three requirements outlined in the statute must be met.  But, as evidenced by the Court's briefing order of February 23, 2022, that statement covers a multitude of unanswered preliminary legal questions.  For example, if the three requirements of the statute are jurisdictional—that is, if they must be met for a federal court to have subject-matter jurisdiction over a section 1782 application—then two additional things are true:   (1) a court must satisfy itself that the applicant satisfied those requirements at the time the application was filed, *see, e.g.*, *Landmark Health Sols. v. Not for Profit Hosp. Corp.*, 950 F. Supp. 2d 130, 135 (D.D.C. 2013) ("'It has long been the case' that subject matter jurisdiction 'depends on the statue of things at the time of the action brought.'   Stated otherwise, subject matter jurisdiction is tested at the time the complaint is filed." (internal citation omitted) (quoting *Grupo Dataflux v. Atlas Global Grp.*, 541 U.S. 567, 571 (2004))); and (2) the target of a section 1782 discovery application cannot waive or forfeit an argument that the applicant failed to meet those requirements at the time of the application, *see, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009) ("Subject-matter jurisdiction cannot be forfeited or waived . . . .").  If those requirements are not of constitutional import, the question of when they must be met remains—may a court grant relief under section 1782 if those three requirements were not met at the time the application was filed, but were met at some time after that?  The legal questions, in turn, raise questions of fact.  Has Lucille met the requirements and, if so, when did it do so?  Or is that issue irrelevant because Edge forfeited its arguments on the topic by failing to raise them before the Court in their original filings?

Having considered the parties' extensive briefing, the Court holds that, although the three requirements of section 1782 are not prerequisites that must be met for a federal court to have the

constitutional power to address a section 1782 application, they nonetheless must be satisfied at the time the application is filed for a court to grant the application.  The Court further finds that Lucille has not shown that it reasonably contemplated a foreign legal proceeding at the time it filed its application in July 2021 and that Edge has not forfeited its arguments on that issue.  Finally, even if it had the authority under the statute to grant Lucille's application, the Court would exercise its discretion to decline to order the requested discovery at this time.  Rather, now that Lucille has filed claims in the courts of Guernsey and of England and Wales, it may, if appropriate, submit a new section 1782 application that can be evaluated on its merits, including analysis of the *Intel* factors.

> ### A.       Section 1782's Requirements

As noted, a section 1782 applicant must meet three requirements before a court will grant its application:  (1) the person or entity from whom discovery is sought must reside or be found within the district; (2) the discovery must be for use in a proceeding before a foreign or international tribunal; and (3) the application must be made by an interested person.  *See In re Veiga*, 746 F. Supp. 2d at 17.  Some courts have characterized these requirements as jurisdictional. For example, in *Kiobel ex rel. Samkalden v. Cravath, Swaine & Moore, LLP*, the Second Circuit stated:

> A district court *has jurisdiction* to grant a Section 1782 petition if:
>
> > (1) . . . the person from whom discovery is sought reside[s] (or [is] found) in the district of the district court to which the application is made, (2) . . . the discovery [is] for use in a proceeding before a foreign tribunal, and (3) . . . the application [is] made by a foreign or international tribunal or any interested person.

895 F.3d 238, 243 (2d Cir. 2018) (alterations in original) (emphasis added) (quoting *Application of Esses*, 101 F.3d 873, 875 (2d Cir. 1996)); *see also, e.g.*, *In re Gorsoan Ltd.*, No. 17-cv-5912,

2021 WL 673456, at *4 (S.D.N.Y. Feb. 22, 2021) (collecting cases suggesting that the statutory requirements are "jurisdictional").  However, the Second Circuit has more recently indicated that, when in *Kiobel* it mentioned jurisdiction, it did not mean that subject-matter jurisdiction was lacking unless all three section 1782 requirements were met.  Instead, that court has glossed what it had called "jurisdictional requirements" as really referring to statutory requirements:  "This Court reviews the district court's ruling 'that a petition satisfies [§] 1782's jurisdictional [i.e. statutory] requirements' *de novo*."  *See In re Guo*, 965 F.3d 96, 102 (2d Cir. 2020) (alterations in original) (quoting *Kiobel*, 895 F.3d at 243).  That is consistent with the discussion of the issue in *Republic of Ecuador v. Connor*, where the Fifth Circuit recognized that

> [d]escribing a federal court's authority under § 1782 as 'jurisdictional' fits awkwardly with conventional Article III terminology.  Normally, federal court jurisdiction reflects that courts' power to decide cases or controversies between contending parties.  Significantly, a § 1782 application may or may not be adversarial.  The federal court addresses an interlocutory discovery application that is ancillary to a non-domestic proceeding.  Its § 1782 order 'adjudicates' nothing else.  Perhaps in recognition that Congress delegated a quasi-administrative role to courts in § 1782, the Supreme Court discussed the scope of a court's "authority"—not its "jurisdiction"—under the statute.

708 F.3d 651, 655 (5th Cir. 2013).  Indeed, both parties here agree that whether the requirements of section 1782 are met does not affect a federal court's subject-matter jurisdiction.[8]  *See* ECF No. 30 at 8–12; ECF No. 33 at 3–4.

---

[8] Edge nonetheless asserts that the requirements are "jurisdictional" in another way.  *See* ECF No. 33 at 4–5.  It contends that they must be met before an applicant has so-called "statutory standing."  The Supreme Court elucidated the concept in *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014).  Static Control made and sold components that allowed other companies to refurbish for resale toner cartridges sold by Lexmark for use in Lexmark's laser printers; as such, Static Control was not in direct competition with Lexmark.  *Id.* at 121.  The Supreme Court had to decide whether Static Control nevertheless fell "within the class of plaintiffs who Congress has authorized to sue" for false advertising under the Lanham Act.  *Id.* at 128.  To do so, the Court used "traditional principles of statutory interpretation" to determine "whether Static Control [had] a cause of action [against Lexmark] under the statute."  *Id.*  The Court found that Static Control, as a business that had alleged that its position in the marketplace was damaged by Lexmark's advertising, came within the class of plaintiffs whom Congress authorized to sue under the statute and that, even though Static Control was not a direct competitor of Lexmark, Static Control had adequately alleged that Lexmark proximately caused its injury by claiming that Static Control had infringed Lexmark's patents.  *Id.* at 137–38.  The Court therefore held that Static Control had "statutory standing" under the Lanham Act.  *Id.* at 140.

Even though the three requirements of the statute are not jurisdictional prerequisites, they still must be met as of the time that the section 1782 application is filed.  That should not be a surprise.  It is axiomatic that each element of a cause of action must be met at the time a claim is filed for that claim to be cognizable in federal court.  *Cf. Best v. Bell*, No. 13 Civ. 163, 2014 WL 1316773, at *6 (S.D.N.Y. Mar. 28, 2014) (noting that the plaintiff "could have filed suit" on the day that "each element of his claim was satisfied").

But the Court need not depend only on such axioms.  Relying on the Supreme Court's statement in *Intel* that a foreign proceeding must be within an applicant's reasonable contemplation "at the time the evidence is sought," 542 U.S. at 259 (quoting Hans Smit, *International Litigation Under the United States Code*, 65 Colum. L. Rev. 1015, 1026 (1965)), the Second Circuit has explicitly held that courts must "assess the indicia of whether contemplated proceedings were within reasonable contemplation *at the time the application was filed*."  *Certain Funds, Accounts and/or Investment Vehicles v. KPMG, LLP*, 798 F.3d 113, 124 (2d Cir. 2015) (emphasis added). Other courts outside the Second Circuit have followed suit.  *See, e.g.*, *In re Caterpillar Inc.*, No. 3:19-mc-31, 2020 WL 1923227, at *9 (M.D. Tenn. Apr. 21, 2020) ("In addition to providing some indication that an action is 'being contemplated' and will commence 'within a reasonable time,' the action must have been within reasonable contemplation at the time the section 1782 application

---

The Court is not convinced that the issue here is one of statutory standing—that is, whether Congress authorized applicants like Lucille to use section 1782 to seek discovery.  Rather, it seems to present a much more ordinary question: whether Lucille has satisfied the elements of the statute.  In any case, as Lucille points out, statutory standing is not a jurisdictional component. ECF No. 35 at 7.  The D.C. Circuit has explained that

> [s]tatutory standing is not really about standing at all, in the sense that it limits a "court's statutory or constitutional *power* to adjudicate a case."  Instead, statutory standing is nothing more than an inquiry into whether the statute at issue conferred a "cause of action" encompassing "a particular plaintiff's claim."  In other words, statutory standing "is itself a merits issue."

*United States v. Emor*, 785 F.3d 671, 677 (D.C. Cir. 2015) (internal citations omitted) (first quoting *Lexmark*, 572 U.S. at 128 & n.4, then quoting *United States v. Oregon*, 671 F.3d 484, 490 n.6 (4th Cir. 2012)).  Thus, there is no "jurisdictional" issue here.

was filed with the district court." (quoting *Certain Funds*, 798 F.3d at 124)); *In re Wei*, No. 18-mc-117, 2018 WL 5268125, at *2 n.1 (D. Del. Oct. 23, 2018) (stating that, because "the relevant question under § 1782 is whether 'at the time the evidence is sought . . . the evidence is eventually to be used' in a foreign proceeding,'" the Court "must assess whether the proceedings were in 'reasonable contemplation' at the time the application was filed" (quoting *Intel*, 542 U.S. at 259)); *In re Pioneer Corp. v. Technicolor, Inc.*, No. 18-cv-4524, 2018 WL 4961911, at *7 (C.D. Cal. Sept. 12, 2018) ("[A] claim must be within reasonable contemplation at the time the application is filed for the discovery to be 'for use' in a proceeding.").

Such a prescription makes good sense. "Generally speaking, the standards for discovery set out in the Federal Rules of Civil Procedure also apply when discovery is sought under § 1782(a)." *In re Veiga*, 746 F. Supp. 2d at 19; *see also, e.g.*, *Glock v. Glock, Inc.*, 797 F.3d 1002, 1009 (11th Cir. 2015) (noting that it would be an "abuse [of] the statute to obtain documents outside the discovery procedures set forth in the Federal Rules of Civil Procedure"); *In re Bayer AG*, 146 F.3d 188, 195 (3d Cir. 1998) ("The reference in § 1782 to the Federal Rules suggests that under ordinary circumstances the standards for discovery under those rules should also apply when discovery is sought under the statute."). "The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable *without discovery*, not to find out if it has any basis for a claim." *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 202 F. Supp. 3d 1, 9 (D.D.C. 2016) (quoting *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1327 (Fed. Cir. 1990)); *see also State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*, No. 12-CV-11500, 2013 WL 10936871, at *10 (E.D. Mich. Nov. 26, 2013) (noting that the discovery rules are not designed "to discover whether a claim exists" (quoting *McCurdy v. Wedgewood Cap. Mgmt. Co.*, No. CIV. A. 97-4304, 1998 WL 964185, at *11 (E.D. Pa. Nov. 16, 1998))); *Samuels v. Eleonora*

*Beheer, B.V.*, 500 F. Supp. 1357, 1362 (S.D.N.Y.1980) ("The discovery rules are not a hunting license to conjure up a claim that does not exist."), *aff'd*, 661 F.2d 907 (2d Cir. 1981).  Requiring a section 1782 applicant to show that a foreign proceeding is its reasonable contemplation at the time it first seeks the assistance of a federal court to issue a subpoena helps to forestall the sort of fishing expeditions unsanctioned by the Federal Rules of Civil Procedure.  It also helps prevent an applicant from using a pending section 1782 application as leverage to extract information from a target when the applicant is still investigating whether it might have a viable cause of action in a foreign jurisdiction.[9]

Additionally, and equally importantly, requiring a section 1782 applicant to meet the statutory prerequisites at the time the application is filed promotes judicial efficiency.  It encourages applicants who are seeking discovery as part of a pre-filing investigation to make a more comprehensive showing that a foreign proceeding is in reasonable contemplation, which will then aid the court (if the application is *ex parte*) or the parties (if it is not) in evaluating both the statutory requirements and the discretionary factors, as well.  For example, a clear identification of the likely claims, parties, and tribunal will aid in determining the nature of the foreign tribunal and the character of its proceedings and proof-gathering restrictions, as well as allowing a fuller analysis of relevancy and burdensomeness, such as whether the requested discovery is likely to be available from a participant in the contemplated foreign proceeding.  More, it will discourage

---

[9] Section 1782(b) expressly allows a person or entity within the United States to voluntarily provide testimony or other information for use in a foreign or international proceeding:  "This chapter does not preclude a person within the United States from voluntarily giving his testimony or statement, or producing a document or other thing, for use in a foreign or international tribunal before any person or in any manner acceptable to him."  28 U.S.C. § 1782(b).  That is what happened here.

prospective litigants from monopolizing scarce court resources with premature applications they hope will later meet the statutory requirements.[10]

For these reasons, the Court holds that a section 1782 applicant must show that, at the time the application is filed, the three statutory requirements are met, including that there is a proceeding in a foreign or international tribunal "within reasonable contemplation," *Intel*, 542 U.S. at 259, in which the requested discovery will be used.

### B.    Forfeiture

As noted, because the question of whether the section 1782 statutory requirements have been met does not affect the Court's jurisdiction, a party can waive or forfeit an argument that those requirements have not been met.[11]  *See, e.g.*, *Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 376 n.2 (5th Cir. 2010) (finding the argument that the statutory requirement that evidence sought in a section 1782 application was not "for use" in a foreign proceeding had been forfeited because it was not raised in the district court).

Lucille argues that Edge forfeited its objections to the statutory sufficiency of Lucille's application "by not raising them at the appropriate time."[12]  ECF No. 35 at 11.  As a reminder, the

---

[10] A mischievous reader may wonder what happens if an applicant shows that a foreign proceeding was pending or reasonably contemplated when its application was filed, but, during the pendency of the application, that proceeding is dismissed or no longer reasonably contemplated.  May the Court consider that post-filing event?  Of course it can, when exercising its discretion to grant or deny the application.

[11] That would be true even if meeting those requirements were necessary for an applicant to have statutory standing. *See, e.g.*, *In re Auld*, 689 F. App'x 623, 627 (10th Cir. 2017) ("Questions of statutory standing aren't jurisdictional and therefore may be [forfeited] through inadequate briefing." (citation omitted)); *Merrimon v. Unum Life Ins. Co. of Am.*, 758 F.3d 46, 53 n.3 (1st Cir. 2014) (stating that "arguments based on statutory standing, unlike arguments based on constitutional standing," can be forfeited); *see also* note 8, *supra*.

[12] Lucille correctly notes that waiver is the intentional abandonment of a known right, while forfeiture is unintentional abandonment.  ECF No. 35 at 11.  It also suggests that Edge waived objections by not raising them soon enough.  *Id.* The Court finds no evidence of intentional relinquishment; rather the question is whether Edge forfeited these arguments.  *See, e.g. Brooks v. Berryhill*, No. 15-cv-436, 2017 WL 10716887, at *5 n.8 (D.D.C. Oct. 26, 2017) (distinguishing between forfeiture and waiver), *report and recommendation adopted*, 2019 WL 120767 (D.D.C. Jan. 7, 2019).

Court entered an Order to Show Cause on July 26, 2021, directing Edge to explain why Lucille's section 1782 application should not be granted.  ECF No. 4.  The August 24 Order extended the deadline for responding to the July 26 OSC to December 1, 2021.  ECF No. 9.  The August 24 Order also noted that the parties retained their "rights, claims and defenses regarding the Application (including whether the Application is proper under 28 USC § 1782 or otherwise enforceable against Lucille)."  *Id.* at 3.  When December 1, 2021, came and went without a submission from Edge, the Court issued the December 2 OSC asking Edge to explain why its failure to respond to the July 26 OSC should not be deemed a waiver or forfeiture of any opposition to Lucille's application and why that application should not be granted.  ECF No. 12 at 2.  Edge timely responded with a submission seeking an extension of the December 1 deadline *nunc pro tunc* and arguing that the discovery that Lucille was then seeking should not be compelled.  *See generally* ECF No. 14.  That submission also questioned whether a foreign proceeding was in Lucille's reasonable contemplation, noting that the application could be denied on that basis.  *Id.* at 9.  The Court ordered briefing on Edge's request for an extension of time and on the merits of Lucille's section 1782 application.  ECF No. 16.  Lucille did not oppose Edge's extension request and the Court granted it in January 2022, after the parties had filed their merits briefs.  *See* ECF No. 20 at 2–3.  Later, there were additional submissions from the parties on the merits of the application, a hearing, and yet more briefs, which did, in fact, address whether a foreign proceeding was within Lucille's reasonable contemplation.  ECF Nos. 21–24, 27, 30, 33, 35; Minute Entry (Feb. 22, 2022).

Lucille contends that, although the August 24 Order was entered "without prejudice to the Parties' rights, claims and defenses regarding the [section 1782] Application (including whether the Application is proper under 28 USC § 1782 or otherwise enforceable against Edge)," Edge

flubbed the deadline of December 1, 2021 included in that Order and, in its response to the December 2 OSC failed to address the question of waiver or forfeiture or "offer any clearly identified argument challenging whether Lucille's Application had met the statutory requirements of § 1782(a)." ECF No. 35 at 11 (first quoting ECF No. 9 at 3, then quoting ECF No. 12 at 2). According to Lucille, "[i]f Edge were going to contend that Lucille had failed to meet § 1782(a)'s statutory requirements . . . , Edge's December 8, 2021 brief was the court-ordered time to do it—and Edge did not. Edge thus . . . forfeited its objections." *Id.* at 12. It further states that Edge first fleshed out its argument that Lucille had failed to meet section 1782's statutory requirements in its brief filed on March 15, 2022, during the most recent (and final) round of submissions on this application. *Id.* at 13.

The Court has already spent too much time on this issue (although it cannot blame the parties, having invited them to expound on it as recently as February 2022). At the outset of this case, when the parties were concentrating on Edge's voluntary production of information to Lucille (as is contemplated under section 1782(b)), Edge preserved its rights to challenge the legal sufficiency of the application. ECF No. 9 at 3. Over the course of these proceedings, Edge has raised the "reasonable contemplation" issue. *See, e.g.*, ECF No. 14 at 9; ECF No. 23 at 1–3. At this point, the issue has been fully aired and fully briefed. A finding of forfeiture is within the Court's discretion and a failure to timely raise an issue may be excused where the opposing party had an opportunity to respond. *See Tatneft v. Ukraine*, 771 F. App'x 9, 9 (D.C. Cir. 2019) ("Ukraine contends that Tatneft failed to timely raise the waiver exception before the district court. But that court excused the forfeiture because Ukraine had ample opportunity to respond and thus suffered no prejudice. This decision was not an abuse of discretion, so we decline to revisit it."). Lucille has had ample opportunity to respond to Edge's arguments that it failed to meet section

1782's statutory requirements and, indeed, has done so admirably.  Any putative forfeiture is excused.

### C.    Lucille's Fulfillment of the Statutory Requirements

Again, a court has the authority to grant a section 1782 application if, at the time the application is filed, (1) the person or entity from whom discovery is sought resides or can be found within the district; (2) the discovery is for use in a proceeding before a foreign or international tribunal that is pending or reasonably contemplated; and (3) the application is made by an interested person.  *See In re Veiga*, 746 F. Supp. 2d at 17.  Because the briefing has focused on the second requirement, the Court will assume without deciding that the first and third are met.[13]

Where there is not a pending proceeding in a foreign or international tribunal, the second requirement can be a tricky one.  The "reasonable contemplation" requirement helps to "guard against abuse of section 1782."  *In re Letter of Request from the Crown Prosecution Serv. of the U.K.*, 870 F.2d 686, 692 (D.C. Cir. 1989).  In analyzing the issue, courts must balance "Congress's desire that broad discovery be available for parties involved in international litigation" against "the potential that parties may use section 1782 to investigate whether litigation is possible in the first

---

[13] To be sure, the first requirement is likely satisfied. Edge is (and has been) headquartered in the District of Columbia and can therefore be "found" within this district. *See, e.g.*, *In re DiGiulian*, No. 1:19-cv-132, 2020 WL 5253849, at *3 (D.D.C. Sept. 3, 2020) ("Courts appear to agree . . . 'that a corporation is "found" in a district where it is headquartered or incorporated.'" (quoting *In re Application of Masters*, 315 F. Supp. 3d 269, 274 (D.D.C. 2018))). As to the third requirement, the Supreme Court has defined an "interested person" as a person or entity that "possess[es] a reasonable interest in obtaining [judicial] assistance." *Intel*, 542 U.S. at 256 (alterations in original) (quoting Smit, *International Litigation* 1027). Courts have found entities that contemplate initiating foreign litigation qualify as "interested persons." *See, e.g.. In re Tovmasyon*, __ F. Supp. 3d __, __, 2021 WL 3737184, at *5 (D. Puerto Rico 2021) ("Here, Petitioners are 'interested persons' for Section 1782 purposes because, as noted earlier, they 'anticipate initiating a proceeding as claimants in the High Court of England and Wales in London, England.'" (quoting the record)); *accord In re MT Baltic Soul Produktentankschiff-Ahrtsgesellschaft mgH & Co. KG*, No. 15 Misc. 319, 2015 WL 5824505, at *1 (S.D.N.Y. Oct. 6, 2015). There is certainly an argument that a section 1782 applicant that has not shown that a foreign proceeding is in reasonable contemplation has also not shown that it is an interested party. Indeed, the Second Circuit, while recognizing that the Supreme Court's definition is "expansive," has noted that an interested person must show that it has "a reasonable interest in obtaining judicial assistance in the . . . foreign proceedings" and suggested that establishing "an established right to provide evidence" and have it considered in the foreign proceeding or a recognized relationship between the section 1782 applicant and a participant in those proceedings might be sufficient to satisfy that requirement. *Certain Funds*, 798 F.3d at 119–20. Those would be difficult things to show where there is no reasonably-contemplated foreign proceeding.

place," which, as discussed above, "is not an appropriate [basis] for a court to compel discovery." *In re Certain Funds, Accounts, and/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. LLC*, No. 14 Civ. 1801, 2014 WL 3404955, at *6 (S.D.N.Y. July 9, 2014), *aff'd*, *Certain Funds*, 798 F.3d 113; *see also, e.g.*, *All Assets Held at Bank Julius Baer & Co.*, 202 F. Supp. 3d at 9 ("The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable *without discovery*, not to find out if it has any basis for a claim." (quoting *Micro Motion, Inc.*, 894 F.2d at 1327)). If a court "doubts that a proceeding is forthcoming, or suspects that the request is a 'fishing expedition,'" it "should deny the request." *In re Newbrook Shipping Corp.*, 498 F. Supp. 3d 807, 816 (D. Md. 2020) (quoting *In re Request for Assistance for Ministry of Legal Affairs of Trinidad and Tobago*, 848 F.2d. 1151, 1156 (11th Cir. 1988)), *rev'd and remanded on other grounds*, ___ F.4th ___, 2022 WL 1162408 (4th Cir. 2022). Therefore, to show that a foreign proceeding is in reasonable contemplation, the applicant must provide "some objective indicium that the action is being contemplated" and will be brought within a reasonable time.[14]  *Certain Funds*, 798 F.3d at 123; *see also, e.g.*, *In re Consorcio Ecuatoriano de Telecomunicaciones S.A.*, 747 F.3d 1262, 1270 (11th Cir. 2014) ("[A] district court must insist on reliable indications of the likelihood that proceedings will be instituted within a reasonable time." (quoting *Crown Prosecution Serv.*, 870 F.2d at 692)).

As noted, facts indicating that at the time the application was filed, the discovery was sought in order to determine whether litigation could or should be pursued are insufficient to meet the "reasonable contemplation" standard. *See, e.g.*, *Ayyash v. Crowe Horvath*, No. 17-mc-482,

---

[14] Lucille has asserted that "[e]stablishing that discovery materials are for 'use' in a foreign proceeding is a very low bar." ECF No. 1-1 at 13. However, the case it cites for that proposition—*In re Masters*—involved a foreign proceeding that was already pending, as did the case *In re Masters* relied on for its assertion that the "burden imposed on an applicant is *de minimis*." *See* 315 F. Supp. 269, 273–74 (D.D.C. 2018) (quoting *In re Veiga*, 746 F. Supp. 2d at 18).

2018 WL 2976017, at *3 (S.D.N.Y. June 13, 2018) (denying a section 1782 application where the facts suggested that the application was "using the . . . application as a fishing expedition to determine if it should pursue litigation").  So, for example, the Second Circuit has found that merely hiring counsel and discussing initiating litigation is not "an objective showing" that allegedly planned proceedings "were within reasonable contemplation." *Certain Funds*, 798 F.3d at 124.  However, because of the "fact-specific nature of the inquiry," courts have resisted identifying "'what precisely an applicant must show' to establish that a proceeding is more than speculative." *Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 102 (2d Cir. 2020) (quoting *Certain Funds*, 798 F.3d at 123).  Nevertheless, a review of section 1782 cases indicates the requirements will be met where an applicant provides *sufficient specificity and detail* about some combination of the following non-exhaustive list of factors:

(1)     the contemplated claims;

(2)     the preparations made for filing those claims (including audits, investigations, retention of foreign counsel, etc.);

(3)     the tribunal in which those claims will be brought;

(4)     the time frame in which those claims will be brought; and

(5)     the evidence supporting those claims.[15]

---

[15] As noted, this is a non-exhaustive list.  Other factors will likely become relevant in other circumstances.  For example, some judicial systems have heightened pleading standards, requiring a plaintiff to submit its evidence along with the pleading initiating the action.  *See, e.g.*, *Consorcio Ecuatoriano de Telecommunicaciones*, 747 F.3d at 1271 (noting that "under Ecuadorian law, [a plaintiff] must submit its evidence with the pleading at the time it commences the civil action"); *In re IJK Palm LLC*, No. 3:16MC171, 2019 WL 2191171, at *1 (D. Conn. Jan. 30, 2019) (noting that Cayman Islands, where the contemplated action was to be brought, has "very high" pleading standards that "require, at the outset of the litigation, a submission of detailed evidence that proves the existence of fraud and mismanagement").  A court may well take that into account in analyzing a section 1782 application (the Court notes, however, that the existence of a heightened pleading standard in a foreign jurisdiction should not interfere with an applicant making a showing satisfactory to a U.S. court that litigation in that jurisdiction is reasonably contemplated).  Similarly, other concerns might come to the forefront where a crime is under investigation and charges are being contemplated.  However, neither of those situations is presented here.

For example, in *In re Furstenberg Finance SAS*, the Eleventh Circuit affirmed the district court's finding that the applicants "produced 'reliable indications of the likelihood that proceedings [would] be instituted within a reasonable time" where they asserted that they would "file proceedings in Luxembourg within forty-five days of receiving the discovery sought under § 1782" and included with their application "specific evidence supporting [their] claims" for fraud, misuse of corporate assets, and managerial misconduct under the Luxembourg Companies Law. 877 F.3d 1031, 1035 (11th Cir. 2017); *see also In re Furstenberg Finance SAS*, No. 16-mc-60266, 2016 WL 10707012, at *1 (S.D. Fla. July 27, 2016) (identifying the specific claims the applicant planned to file).   In *Consorcio Ecuatoriano de Telecomunicaciones*, the "reasonable contemplation" showing was met where the applicant sought the discovery in support of claims that two of its former employees had "violated Ecuador's collusion laws in connection with processing and approving [certain] allegedly inflated invoices" and provided details of an "extensive" internal audit and investigation uncovered facts supporting those claims.   747 F.3d at 1265, 1270–71.   Similar showings have satisfied other courts.   *See, e.g.*, *Bravo Express Corp. v. Total Petrochemicals & Refining U.S.*, 613 F. App'x 319, 323 (5th Cir. 2015) (finding that the applicant had sufficiently satisfied the second requirement where, along with its section 1782 application, the petitioner filed a sworn affidavit from a partner at the law firm representing the petitioner asserting that an action would be filed "imminently" in a particular foreign court and laid out "in great detail" the facts giving rise to the prospective action); *In re Application of Hansainvest Hanseatische Inv.-GmbH*, 364 F. Supp. 3d 243, 249–50 (S.D.N.Y. 2018) (finding sufficient objective indicia where the applicant had hired counsel in the jurisdiction where foreign litigation was contemplated, retained experts, sent a detailed demand letter to the potential defendant, and made affirmative representations as to when the foreign proceeding would be filed);

*In re Kiobel*, No. 16 Civ. 7992, 2017 WL 354183, at *3 (S.D.N.Y. Jan. 24, 2017) (finding the second statutory factor satisfied where the applicant showed that counsel in the Netherlands (where litigation was contemplated) had "(1) drafted a writ of summons, which is the initiating document in Dutch proceedings; (2) applied for and obtained legal aid on behalf of [the applicant] from the Dutch Legal Aid Board, which required a showing that meaningful steps had been taken to prepare for the action; and (3) sent 'liability letters' to [the putative opposing party], which had the effect of tolling the statute of limitations"), *rev'd on other grounds sub nom. Kiobel ex rel. Samkalden*, 895 F.3d 238; *cf., e.g.*, *In re MT Baltic Soul Produktentankschiff-Ahrtsgesellschaft mgH & Co. KG*, No. 15 MISC 319, 2015 WL 5824505, at *2 (S.D.N.Y. Oct. 6, 2015) (finding the "reasonable contemplation" requirement not met where the applicants "[did] not identify with particularity the types of proceedings they expect to bring against the purported [defendants], nor the countries or tribunals in which they may take action (aside from cursory references to England and Anguilla)").

Here, Lucille's submissions do not establish that, at the time the application was filed, a foreign proceeding was in its reasonable contemplation.  The application itself was accompanied by a declaration from Lee, which outlines in five paragraphs the purchase of the Property, the failure to sell it in 2016–2017, the decline in its value, and the foreclosure.  ECF No. 1-2 at 1–3, ¶¶ 3–5, 7–8.  The representations regarding potential litigation are threadbare, stating that "Lucille is investigating and contemplates asserting" causes of action

(1)    "against HAIL under English law for the negligent breach of its duty to continuously monitor the Property's performance and to implement available measures to improve Property value.  With the help of legal counsel, a proceeding asserting such a claim would likely be brought in a suitable court in England, Singapore, or Guernsey or in an arbitration proceeding in Guernsey";

(2)    "under Guernsey or Singapore law against HSBC Guernsey, as director of 1350 Eye Street, for its negligence and breaches of fiduciary duties owed to Applicant and 1350 Eye Street Limited.  With the help of legal counsel, a

> proceeding asserting one or more such claims would likely be brought in a suitable court in Singapore or Guernsey or in an arbitration proceeding in Guernsey"; and
>
> (3)      "under Guernsey law against HSBC Guernsey for breaching its duty under 1350 Eye Street Limited's shareholder agreement to keep Lucille duly informed as to all financial and business affairs of the Property and to provide details of any actual or prospective material change therein as soon as details were available, thereby causing Lucille to suffer preventable losses.  With the help of legal counsel, a proceeding asserting that claim would likely be brought in a suitable court in Guernsey or in an arbitration in Guernsey."

*Id.* at 4–5, ¶¶ 10–12.  In addition, Lee asserted that Lucille was investigating and contemplated asserting "other potential causes of action against HAIL, HSBC Guernsey, or HSBC.  With the help of legal counsel, investigation is continuing concerning additional claims and the appropriate jurisdiction and tribunal for asserting them."[16]  *Id.* at 5, ¶ 13.  The application provides only the most general identification of potential claims and of the many jurisdictions in which such claims might perhaps be brought.  That is not enough.  *See, e.g.*, *MT Baltic Soul*, 2015 WL 5824505, at *2 (denying a section 1782 application where the applicants failed to "identify with particularity the types of proceedings they expect to bring" or "the countries or tribunals in which they may take action (aside from cursory references to England and Anguilla)").  Nowhere are there any particulars about what facts support the claims—indeed, the declaration reads as if the theory of

---

[16] In its most recent briefs, Lucille has argued that the discovery it seeks is for use in Guernsey liquidation proceedings of 1350 Eye Street Limited, asserting that Edge is an "interested party" in that proceeding as an "indirect investor in the company being liquidated."  ECF No. 35 at 16; *see also* ECF No. 30 at 24.  That is an argument of recent vintage and exists nowhere in Lucille's submissions prior to March 2022.  Rather, up until then, Lucille had argued exclusively that it sought production of documents for use in a putative proceeding that it would bring against one or more of the HSBC entities.  In any case, that liquidation does not change this analysis.  There is no indication that, at the time Lucille filed its section 1782 application, it sought documents from Edge to be used in a Guernsey liquidation proceeding, which does not appear to have been pending at the time of that application.  Thus, Lucille has not shown that it was seeking documents from Edge to be used in a reasonably contemplated liquidation proceeding.  Additionally, Lucille has failed to explain in any detail how the documents it now seeks to *compel* Edge to produce would be relevant to that proceeding, asserting primarily that the documents Edge *voluntarily* produced are "being used in . . . the private members-voluntary Liquidation proceeding in Guernsey."  ECF No. 30 at 24.  Finally, that proceeding is a "private members voluntary Liquidation."  *Id.*  Lucille does not even address whether such "private" and "voluntary" proceedings would qualify under section 1782 as proceedings "in a foreign or international tribunal." 28 U.S.C. § 1782(a).

liability is merely that the Property lost value and was foreclosed upon, so either HSBC, HSBC Guernsey, and/or HAIL must have breached their duties.  *See, e.g.*, *In re Abid Valech*, No. 20-mc-23408, 2020 WL 8919124, at *7 (S.D. Fla. Dec. 31, 2020) (recommending denying a section 1782 application where the legal theory provided for the contemplated foreign proceeding was based on "speculation" and "assumption[s]"), *report and recommendation adopted*, 2021 WL 1062228 (S.D. Fla. Mar. 18, 2021).  Perhaps that is unsurprising.  There is no indication that Lee is familiar with the laws of the myriad jurisdictions in which litigation was allegedly contemplated or with the procedures of the courts or arbitral forum in which litigation might be brought.  Thus, the representations are a far cry from, for example, a detailed explanation from legal counsel on the specifics of the contemplated claims and the tribunal where they would be filed.  *See, e.g.*, *Bravo Express*, 613 F. App'x at 323 (crediting a detailed affidavit from counsel regarding the claims and the foreign court in which they would be filed).  Moreover, Lucille points out that "at all relevant times, it has been represented . . . by Guernsey, English, and Singaporean counsel in relation to the contemplated foreign proceedings" (ECF No. 30 at 24), so a declaration from one of them would surely have been possible.[17]

Tellingly, Lucille has made representations that undermine its statements that, when it filed its application, it was contemplating an action that would be brought within a reasonable time.  Lee's affidavit asserts that "Lucille contemplates asserting and intends to asset applicable causes of action against HAIL, HSBC, or HSBC Guernsey (or some combination of those companies) as soon as reasonably practicable, depending on whether Lucille receives satisfactory responses to further inquiries or requests for relief."  ECF No. 1-2 at 4, ¶ 9.  That, in tandem with the slightly less vague representations set out above, establishes that Lucille did not know where, when, or

---

[17] As noted, the mere fact that counsel has been retained in a foreign jurisdiction is not sufficient evidence that a foreign proceeding is in reasonable contemplation.  *See, e.g.*, *Certain Funds*, 798 F.3d at 124.

even against whom the allegedly contemplated foreign proceedings would be brought.  More, the declaration explicitly states that whether this inchoate foreign proceeding will be brought is dependent "on whether Lucille receives satisfactory responses to further inquiries or requests for relief."  *Id.*  That phrase is ambiguous.  It could mean that the foreign proceeding turns on the information Lucille receives from Edge—a clear indication that, at the time the application was filed, Lucille was searching for the factual basis for a claim.  It could also mean that litigation would not be necessary if the HSBC Entities agreed to provide relief to Lucille voluntarily.  At least one court has held that issuance of a letter stating that litigation will not be brought if the potential defendant voluntarily meets certain conditions weighs *against* a finding that litigation was in reasonable contemplation.  *See In re Caterpillar Inc.*, 2020 WL 1923227, at *10 (finding that the sending of a cease-and-desist letter (that was complied with) "demonstrates that no legal proceeding was reasonably being contemplated").

Later submissions reinforce the conclusion that proceedings in a foreign or international tribunal were not yet in Lucille's reasonable contemplation in July 2021.  For example, on December 22, 2021, Lucille stated that "Edge's knowledge of tactical and strategic business and leasing plans for the Property, directives from HAIL and HSBC Guernsey to Edge, and Edge's communication of information to HAIL and HSBC Guernsey as to the true status of the investment" are "relevant to showing *whether* or to what extent HAIL, HSBC, and HSBC Guernsey accurately or inaccurately disclosed to investors the true status of the investment, whether they breached their duties to investors, and related issues."  ECF No. 17 at 6 (emphasis added).  It further stated that Lucille "needs additional information from Edge to compare representations and omissions by HAIL, HSBC, and HSBC Guernsey with the facts concerning the Property's management possessed by Edge" and characterized the requested discovery as

"crucial" because "Lucille lacks detailed information concerning plans for managing the Property and the strategic planning and status information Edge provided to [the HSBC Entities]" and needs to "be able to analyze the accuracy of disclosures, material omissions, and failures relating to the strategic direction and monitoring of the Property." *Id.* at 8, 13. Lee's second declaration, which is attached to Lucille's December brief, is even clearer: "Lucille wishes to promptly obtain additional information and documents from Edge. Documents and information in the possession of Edge concerning its plans and performance (which Lucille does not possess) are relevant to and *necessary for developing Lucille's contemplated claims*" against the HSBC Entities. ECF No. 17-1 at 3, ¶ 7 (emphasis added). That is, it appears that, as late as the end of December 2021 (five months after the filing of the application), Lucille was seeking discovery from Edge in order to determine whether it had a cause of action against any of the HSBC Entities. That is not a proper use of section 1782.[18] *See, e.g.*, *In re Certain Funds*, 2014 WL 3404955, at *6 ("Courts must embrace Congress's desire that broad discovery be available for parties involved in international litigation while also guarding against the potential that parties may use section 1782 to investigate whether litigation is possible in the first place, putting the cart before the horse. The latter is not an appropriate one for a court to compel discovery.").

The Court thus finds that Lucille's section 1782 application lacked sufficient specificity and detail to allow the Court to determine that it sought the requested discovery for use in a foreign or international legal proceeding that was reasonably contemplated at the time it was filed. Because Lucille did not satisfy the statutory prerequisites for relief under that provision, its

---

[18] This decision does not contravene the established rule that discovery is available under section 1782 when potential claims are at the investigative stage. Rather, it merely requires an applicant to present the court with objective indicia that its investigation has gone past the preliminary stages and it is not seeking to use the statute or the tools of the Federal Rules of Civil Procedure to "investigate whether litigation is possible in the first place," *In re Certain Funds*, 2014 WL 3404955, at *6, or "find out if it has any basis for a claim," *All Assets Held at Bank Julius Baer & Co.*, 202 F. Supp. 3d at 9.

application will be denied at this time.  However, as discussed below, the denial is without prejudice to the filing of a new application that meets section 1782's requirements.

### D.        The Court's Discretion

Even if the Court had the authority to grant Lucille's section 1782 application, it would not do so in the exercise of its discretion.  The Supreme Court has identified four factors that may be used to guide a district court's discretion in resolving such an application:  (1) whether the target of the discovery request is a participant in the foreign or international proceeding, (2) the nature of the foreign tribunal and character of its proceedings, (3) whether the application is an attempt to "circumvent foreign proof-gathering restrictions or other policies," and (4) whether the request is "unduly intrusive or burdensome."  *In re Veiga*, 746 F. Supp. 2d at 17 (quoting *Intel*, 542 U.S. at 264–65).  "[T]he *Intel* factors are non-exhaustive, and a court may exercise its discretion to deny a petition based on other considerations."  *In re Petition of the Republic of Turkey*, No. 19-cv-20107, 2020 WL 4035499, at *2 (D.N.J. July 17, 2020) (citing *Kulzer v. Esschem, Inc.*, 390 F. App'x 88, 92 (3d Cir. 2010)); *see also In re Bayerische Motoren Werke AG*, No. 19-MC-80272, 2019 WL 5963234, at *3 (N.D. Cal. Nov. 13, 2019) (noting that the *Intel* factors are "non-exhaustive"); *JSC MCC EuroChem v. Chauhan*, No. 17-MC-5, 2018 WL 3872197, at *3 (M.D. Tenn. Aug. 15, 2018) ("In *Intel Corp.*, the Court repeatedly emphasized that these factors are non-exhaustive and 'may' be taken into account as applicable." (quoting *Intel*, 542 U.S. at 264–65)).

Lucille's vagueness about the tribunal(s) in which it sought to file claims has made analysis of the *Intel* factors difficult, if not impossible.[19]  As Edge noted a few months ago, it could not address three of the four guides the Supreme Court has suggested to district courts:  it was unclear if Edge would be a participant in a matter before a foreign tribunal, what was the nature of the

---

[19] Indeed, that is another reason courts should require more detail about the applicant's allegedly reasonably-contemplated foreign proceeding in their applications than Lucille provided in its.

foreign tribunal and character of its proceedings, and whether the foreign tribunal had proof-gathering restrictions that Lucille was attempting to circumvent.  ECF No. 18 at 7.  It also made more difficult the analysis of burdensomeness under the fourth *Intel* factor.  Rule 26 of the Federal Rules of Civil Procedure, which governs subpoenas, requires a court to limit the extent or frequency of discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."  Fed. R. Civ. P. 26(b)(2)(C)(i).  More, "[w]hen the information sought [in a section 1782 application] is equally available through the foreign proceeding from a party to that proceeding, such requests targeting a different person in the United States are by their very nature unduly burdensome."  *In re Macquerie Bank, Ltd.*, No. 2:14-cv-00797, 2015 WL 3439103, at *9 (D. Nev. May 28, 2015).  With no clear indication of who would be sued where, it was difficult to intelligently assess the question of burden. [20]

The circumstances have changed.  In March 2022, Lucille finally pleaded its claims in the courts of Guernsey and of England and Wales.  ECF No. 35-1 at 1, 4, ¶¶ 2, 7.  Fuller analysis of the *Intel* factors, including relevance and burdensomeness, has become possible.  More, Lucille's focus since November 2021 on ten discrete categories of documents—not to mention its focus since January 2022 on only one of those categories (the Category 10 documents)—suggests that the proposed document subpoena filed with its application is likely overbroad.  Its amendment of its request for a Rule 30(b)(6) deposition of Edge to instead seek individual depositions of two of Edge's executives suggests that its original deposition subpoena is both inaccurate and overbroad.

---

[20] Recall, for example, that one of Lucille's proposed protocols for production of emails required Edge to produce only those emails that were sent to or from certain HAIL or HSBC Guernsey personnel.  ECF No. 24 at 4.  Those same documents would seem to be available from HAIL and HSBC Guernsey, which are now parties in foreign proceedings brought by Lucille in March 2022.  Lucille does not deny that but contends that "there is no guarantee that HAIL and HSBC Guernsey have preserved all the same communications and other documents that Edge has preserved."  ECF No. 35 at 26.  That is an argument that can be made should Lucille decide to file a new application for discovery from Edge pursuant to section 1782.

Thus, if the Court indeed has the authority to address the application because Lucille has now met the statutory preconditions (as Lucille urges), it exercises its discretion to deny the application at this time—not because the *Intel* factors counsel denial, but because the *Intel* factors can now be addressed.[21]   The denial is without prejudice, however, to Lucille filing a new application in this same action that meets the requirements of section 1782.  *See, e.g.*, *In re da Costa Pinto*, No. 17—MC-22784, 2018 WL 6620132, at *1 (S.D. Fla. Oct. 23, 2018) (denying a section 1782 application but allowing the applicant 30 days to file a new application under the same case number).

### III.   CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the Application of Lucille Holdings Pte. Ltd. for an Order Permitting Discovery under 28 U.S.C. § 1782 (ECF No. 1) is **DENIED WITHOUT PREJUDICE**.  It is further

**ORDERED** that, on or before June 6, 2022, Lucille Holdings Pte. Ltd. may submit a new section 1782 application directed at Edge Funds Management LLC under this same case number.  That application shall be served on Edge Funds Management LLC and shall include a memorandum of law in support the request that is complete in itself and does not incorporate earlier filings by reference.  It shall also include one or more proposed subpoenas that are narrowly tailored to the discovery sought.  It is further

---

[21] Lucille's argument that denying its application when it has now satisfied the three statutory factors of § 1782(a) is an affront to judicial efficiency, *see* ECF No. 30 at 20, is not well-taken.  Its own protracted vagueness as to its claims and the time periods and venues in which they would be brought would have necessitated further briefing on the *Intel* factors even if the Court had found it had the statutory authority to grant the application despite the fact that Lucille failed to show that it met the statutory prerequisites when this litigation began.  More, the goal of efficiency is served by a rule that a section 1782 applicant must, at the time of its application, demonstrate through sufficiently specific and detailed objective indicia (such as those suggested here) that proceedings in a foreign or international tribunal will be initiated within a reasonable time, *see Crown Prosecution Serv.*, 870 F.2d at 692, because such a showing will help stave off the drawn-out litigation over the question that happened here.

**ORDERED** that 14 days after Lucille files and serves any new section 1782 application, Edge Funds Management LLC shall file and serve any opposition to the application.   That opposition shall be complete in itself and shall not incorporate earlier filings by reference.  It is further

**ORDERED** that 7 days after Edge Finds Management LLC files any opposition, Lucille Holdings Pte. Ltd. shall file any reply.   That reply shall be complete in itself and shall not incorporate any prior filings by reference.  It is further

**ORDERED** that if Lucille seeks to appeal this Memorandum Opinion and Order rather than file a renewed motion, it shall do so in accordance with Rule 72(a) of the Federal Rules of Civil Procedure by filing objections within 14 days after being served with a copy of this Memorandum Opinion and Order.  If such objections are filed, a district judge will be assigned to the case, who may reconsider or reverse this Memorandum Opinion and Order if it is "clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A).  It is further

**ORDERED** that if this Memorandum Opinion and Order is not appealed within 14 days of service and no new section 1782 application is filed in this action by June 6, 2022, the case shall be closed.

**SO ORDERED.**

Date:  May 5, 2022

_____
G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE